### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| SONNY WILSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-08-0096 |
| | § | |
| RANDALL LEE HEALY, et al., | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM OPINION AND ORDER

Plaintiff, a state inmate proceeding *pro se* and *in forma pauperis*, filed this section 1983 lawsuit against Randall Lee Healy and William Samarneh complaining of deliberate indifference to his medical needs. Defendants filed a motion for summary judgment (Docket Entry No. 72), to which plaintiff objected and responded (Docket Entries No. 85, 86.)[1]

Based on the Court's consideration of the pleadings, the motion, objections, and response, the record, and the applicable law, the Court GRANTS the motion for summary judgment and DISMISSES this case for the reasons that follow.

*Background and Claims*

Plaintiff filed this civil rights lawsuit alleging numerous vague complaints arising from several years of unsatisfactory prison medical care. Plaintiff is a "three strikes" inmate

---

[1] Plaintiff's "addendum" to his response to the motion for summary judgment (Docket Entry No. 93), untimely filed without leave of court, will not be considered by the Court. Even assuming the addendum were timely and properly filed, it raises no grounds upon which summary judgment could be denied.

barred from proceeding *in forma pauperis* under section 1915(g) absent imminent danger of serious physical injury. The Court allowed him to proceed *in forma pauperis* in this lawsuit, but only as to his claims for deliberate indifference regarding his current cancer, seizure, and thyroid medications. (Docket Entries No. 10, 59.) Consequently, any other claims asserted by plaintiff in this lawsuit are not before the Court and will not be addressed.

Plaintiff's medical records show that, in January of 2008, plaintiff was found to have thyroid cancer, which required surgical removal of the gland and treatment with replacement thyroid hormone. Plaintiff underwent successful radiation therapy and his most recent full body radiation scan revealed no additional cancer. Plaintiff claims that defendant Randall Lee Healy, a physician assistant providing medical care at the Estelle Unit, was deliberately indifferent to plaintiff's serious medical needs by denying him proper follow-up and medication for his thyroid condition. Plaintiff asserts that Healy failed to follow treatment recommendations by the surgeons and specialists, implementing instead his own treatment plan. Plaintiff also claims that Healy provided him inadequate anti-seizure medication, which caused him to have one or more seizures until the dosages were readjusted.

Plaintiff claims that defendant William Samarneh, a practice manager at the Estelle Unit, failed to respond to plaintiff's medical care grievances, refused to assign plaintiff to a different care provider, and forced him to accept inadequate medical care from Healy.

Plaintiff seeks injunctive relief and monetary damages from defendants in their official and individual capacities. Defendants seek summary judgment dismissal of

plaintiff's claims under Eleventh Amendment and qualified immunity, and contend that plaintiff's claims of deliberate indifference are without merit.

*Standard of Review*

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. Rule 56(c). A factual dispute will preclude a grant of summary judgment if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court may not weigh the evidence or make credibility determinations. *Id*. Conclusional allegations, speculation, improbable inferences, or a mere scintilla of evidence, however, are insufficient to defeat a summary judgment motion. *See Michaels v. Avitech, Inc.*, 202 F.3d 746, 754-55 (5th Cir. 2000).

*Plaintiff's Objections*

In addition to filing a response to the motion for summary judgment, plaintiff filed a document entitled, "Plaintiff's Objections to Defects in Summary Judgment Motion." (Docket Entry No. 85.) The Court has reviewed these objections and overrules them as groundless, as follows:

1. Plaintiff complains that defendants sent him a defective copy of the motion that is missing a page. Plaintiff's descriptions of the pages he received show that his copy of the motion is the same as the copy filed by defendants with the Court.

2. Plaintiff asserts that defendants "selectively omitted important medical records," such as his emergency room visit of April 26, 2007. However, plaintiff attached a copy of this "missing" medical record to his response to the motion for summary judgment, and he identifies no other omissions.

3. Plaintiff claims that "important records" are missing from the hospital records submitted by defendants as Exhibit B. Plaintiff does not identify any specific missing record, explain its importance, or submit a copy for the Court's review.

4. Plaintiff objects that the affidavit of Charles Adams, M.D., is "fatally biased" and inadmissible, violates *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and is unreliable because the medical records Dr. Adams reviewed "are subject to human error and neglect" and contain lies written by Healy. These allegations are unsupported in the record. Nor do plaintiff's numerous disagreements with the content of Dr. Adams's affidavit provide grounds for striking or excluding the affidavit.

5. Plaintiff objects that the affidavit of Anita Panicker was not made under penalty of perjury or on personal knowledge of the facts, and that her testimony is "fatally biased," factually unreliable, false, and violates *Daubert*. Ms. Panicker's affidavit is notarized and admissible. Plaintiff's other objections are not supported in the record or are inapplicable to the witness's testimony.

*Eleventh Amendment Immunity*

Plaintiff's claims for monetary damages against defendants in their official capacities are barred by the Eleventh Amendment. *See Pennhurst State School and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Because a suit brought against a state official in his official capacity is, in reality, a suit asserted against the state itself, the federal lawsuit is

barred. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Howlett v. Rose*, 496 U.S. 356, 365-66 (1990). Accordingly, defendants' motion for summary judgment dismissal of plaintiff's claims for monetary damages against defendants in their official capacities is GRANTED, and the claims are DISMISSED WITH PREJUDICE.

*Claims for Deliberate Indifference*

To establish the requisite deliberate indifference, plaintiff must show that defendants had subjective knowledge of a substantial risk to his health, and that they responded with deliberate indifference to that risk. *See Jacobs v. West Feliciana Sheriff's Dep't*, 228 F.3d 388, 394 (5th Cir. 2000). That is, plaintiff must present evidence that defendants refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for his serious medical needs. *See Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Deliberate indifference is not the equivalent of negligence; deliberate indifference "describes a state of mind more blameworthy than negligence." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). It is not sufficient that defendants should have known of a substantial risk; they must have actual knowledge of the risk and ignore it. In sum, plaintiff must prove that defendants knew of and disregarded an excessive risk of injury to him, and that they were both aware of the facts from which the inference could be drawn that a substantial risk of serious harm existed, and that they drew that inference. *Id*. at 837.

Thus, evidence of unsuccessful medical treatment, negligence, neglect, or even malpractice is insufficient to demonstrate deliberate indifference. *Gobert v. Caldwell*, 463 F.3d 339, 347 (5th Cir. 2006); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991); *see also Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999) ("[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not."); *Graves v. Hampton*, 1 F.3d 315, 319 (5th Cir. 1993) ("It is firmly established that negligent or mistaken medical treatment or judgment does not implicate the eighth amendment and does not provide the basis for a civil rights action."). Moreover, a delay in receiving treatment only constitutes a constitutional violation if there is deliberate indifference which results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

The Fifth Circuit Court of Appeals further recognizes that, "[T]he decision whether to provide additional treatment is a classic example of a matter for medical judgment." *Gobert*, 463 F.3d at 346. For that reason, a prisoner's disagreement with his medical treatment does not state a claim for deliberate indifference to serious medical needs under the Eighth Amendment. *Id.* Even if a lapse in professional judgment occurred, any such failure amounts to mere negligence or malpractice, and not a constitutional violation. *Harris v. Hegman*, 198 F.3d 153, 159 (5th Cir. 1999). Federal constitutional protections are not violated merely because an inmate's medical treatment was unsuccessful or because a condition persisted despite treatment. *Gobert*, 463 F.3d at 346.

A. <u>Randall Lee Healy</u>

In the instant case, plaintiff claims that defendant Healy denied him appropriate thyroid and anti-seizure medications, and failed to monitor his medical conditions in an a medically appropriate manner. In an affidavit submitted in support of defendants' motion for summary judgment, Charles D. Adams, M.D., testified as follows:

> I am currently the Medical Director of Outpatient Services for the University of Texas Medical Branch Correctional Managed Care ('UTMB/CMC'). I have been with UTMB/CMC since June 1995. As the Medical Director, I supervise the physicians, physician assistants, and advanced nurse practitioners at about 90 Texas Department of Criminal Justice (TDCJ) units, a county jail, and four Federal Correction Facilities.
>
> I have been asked to review Plaintiff's correctional medical records from December 1, 2005 through August 19, 2009, in order to provide the Court with information and expert medical opinion(s) regarding Randall Healy's medical treatment of Sonny Wilson.
>
> Sonny Wilson is a 48 year old male, assigned to the High Security Facility at the Estelle Unit, Huntsville, Texas. He is assigned to the administrative segregation portion of this facility, and is escorted by two correctional officers and handcuffed, when he leaves his cell for any reason.
>
> Mr. Wilson was seen frequently for his seizure disorder, medication was given daily and appropriate monitoring through lab tests was performed. Mr. Wilson complains that Mr. Healy severely reduced in [sic] long standing prescription for Dilantin. Dilantin also referred to as Phenytoin, is an anti-eleptic drug, also called an anticonvulsant. It works by slowing down impulses in the brain that cause seizures. According to Mr. Wilson's medication compliance records, on December 1, 2005, Mr. Wilson was receiving Dilantin 100mg capsules with a dosage of 3 capsules every PM. On March 11, 2006, the time of day in which Mr. Wilson was to receive the Dilanti[n] was changed to AM. On June 24, 2008, Dr. Ernestine Julye entered an order that Mr. Wilson was to stop receiving 300mgs of Dilantin one time [a] day and was to start taking 200 mgs of Dilantin twice daily. This was done in an effort to help control Mr. Wilson's

7

seizures and increased [the] daily Dilantin dosage to 400mgs. According to Mr. Wilson's medical records he remained on the dosage of 200mgs Dilantin twice daily through the rest of the records referenced above. Mr. Wilson did have brief seizures in spite of this and was treated appropriately for his injuries. Mr. Healy and Dr. E. Julye have continued to monitor his seizure disorder and treatment.

On April 17, 2007, the patient was found with a 9 inch metal knife in his cell. The following day, he threatened to kill himself and became very agitated. He was transferred to a psychiatric facility for evaluation. Mr. Wilson returned 6 days later, much calmer. On April 26, 2007, the patient had an episode of difficulty breathing and was taken to the emergency room and treated for this with good results.

On October 16, 2007, Mr. Healy found a mass growing in the left part of the anterior neck, near the thyroid gland. Mr. Wilson was referred to specialists in Galveston, Texas. He went to Galveston on November 12, 2007, was evaluated and returned to the unit. There was several days delay in obtaining the specialty notes from Galveston. On January 14, 2008, Mr. Healy went to Galveston for surgery on his neck mass and had a thyroidectomy for what turned out to be a thyroid cancer. The patient returned to the unit on January 20, 2008 and was placed on 600mg Ibuprofen for pain management following his surgery. On January 24, 2008, Mr. Healy removed the patient's sutures. Mr. Wilson made several more trips to Galveston to follow up his thyroid cancer with an Endocrinologist and received subsequent radiation therapy and thyroid medication supplement that he now needs to take due to his thyroid removal. Mr. Healy ordered this medication and made appropriate adjustments in the dosage and ordered appropriate tests to measure the medicines [sic] effect. Mr. Wilson continued to make trips to Galveston for the rest of the year and into 2009. Mr. Healy and Dr. E. Julye have continued to monitor his condition and treatment and have adjusted medications when indicated.

In summary, based upon my education, training, and experience as a physician both in the community and correctional settings, I believe that Randall Healy treated Mr. Wilson in a fair and competent manner. Mr. Wilson's medical

> needs were addressed promptly and professionally. I conclude that the actions taken by Mr. Healy were consistent with other well-trained Physician Assistant[s], knowing what Mr. Healy knew at the time and under the same or similar circumstances.

(Docket Entry No. 72, Exhibit C.)

The Court has carefully reviewed the 280 pages of plaintiff's medical records submitted by defendants (Docket Entry No. 74, Exhibits A, B), as well as those submitted by plaintiff, and finds that these records show plaintiff has received extensive and regular medical examinations and treatment by Healy and other medical providers, including specialists and surgeons. The records evince that frequent medical attention has been given to plaintiff's thyroid, seizure, and cancer conditions. The records, augmented by Dr. Adams's affidavit, provide probative summary judgment evidence that plaintiff's thyroid, cancer, and seizure medical conditions have not been ignored or intentionally mistreated, and no wanton disregard for, or deliberate indifference to, plaintiff's medical needs are shown. Plaintiff's thyroid condition has been regularly monitored and his thyroid medication increased or decreased as necessary, when indicated by lab test results. (Docket Entry No. 72, Exhibit A, pp. 20, 25-27, 52, 59-62, 72, 158, 178, 210-212.) Although plaintiff complains that he was not given his medications at times during April and May 2009, his medical records show that the medications were withheld in preparation for plaintiff's full body radiation scan of May 20, 2009, and not in wanton disregard for plaintiff's medical needs. (Docket Entry No. 72, Exhibit A, pp. 99, 114-115, 122; Exhibit B.) Plaintiff's

9

medications were resumed upon his return to prison following the body scan procedure. *Id.*, Exhibit A, pp. 150, 153.

Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995). The evidence in this case, in the form of plaintiff's voluminous medical records and Dr. Adams's affidavit testimony, as well as plaintiff's own narratives of his medical care, clearly show that plaintiff's medical needs have been continually and promptly addressed by defendants and other prison medical staff, even if not according to plaintiff's own demands and expectations.

Plaintiff also refers to his post-surgical discharge instructions of January 18, 2008, noting that the hospital physicians recommended that prison medical providers perform weekly thyroid hormone level testing on plaintiff and follow the surgeon's written follow-up plan. Plaintiff states that Healy failed to follow the surgeon's orders and plan, substituting instead his own medical orders and plan. It is well established that a prison medical provider's failure to follow the recommendations of a specialist or outside provider's treatment suggestions does not, standing alone, demonstrate deliberate indifference. *Stewart v. Murphy*, 174 F.3d 530, 535 (5th Cir. 1999). This is particularly applicable in the instant case, as the medical records show that plaintiff received medical care and treatment, although different from that recommended by the specialist. Moreover, Dr. Adams testified in his affidavit that Healy's monitoring of and adjustments to plaintiff's thyroid and seizure

conditions and medications were appropriate. Plaintiff presents no probative summary judgment evidence controverting Dr. Adams's medical testimony, and plaintiff's disagreements with Dr. Adams's medical opinions do not constitute probative summary judgment evidence.

To the extent plaintiff claims that his medical records are falsified and that Healy made false medical entries, the record reflects no evidence of falsification and plaintiff proffers no probative summary judgment evidence to support this claim.

In short, the record and probative summary judgment evidence evinces no deliberate indifference to plaintiff's serious medical needs by Healy, and Healy is entitled to summary judgment dismissal of plaintiff's Eighth Amendment claims against him.

B.     William Samarneh

Plaintiff alleges that Samarneh violated his due process rights by failing to investigate properly and respond to plaintiff's grievances regarding Healy's medical care. However, the failure of a prison official to investigate properly an inmate's grievance does not give rise to a constitutional claim, as prisoners enjoy no constitutionally protected liberty interest in having grievances resolved to their satisfaction. *Geiger v. Jowers*, 404 F.3d 371, 374-75 (5th Cir. 2005).

Plaintiff further complains that Samarneh was deliberately indifferent to plaintiff's health and safety by forcing plaintiff to obtain his medical care from defendant Healy. He asserts that Samarneh knew of and disregarded the excessive risk to plaintiff's health caused

by Healy's medical care. The Court has rejected plaintiff's underlying assertion that Healy's medical care constituted an excessive risk to plaintiff's health and safety. Accordingly, plaintiff does not establish that Samarneh was deliberately indifferent to plaintiff's health and safety by continuing to allow Healy to provide and direct plaintiff's medical care.

Defendant Samarneh is entitled to summary judgment dismissal of plaintiff's Eighth Amendment claims against him.

*Conclusion*

Defendants' motion for summary judgment (Docket Entry No. 72) is GRANTED and plaintiff's claims are DISMISSED WITH PREJUDICE. Any and all pending motions are DENIED AS MOOT.

The Clerk will provide copies of this order to the parties.

Signed at Houston, Texas on March 31, 2011.

Gray H. Miller
United States District Judge

12